# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| THE ESTATE OF WILLIAM C. BARNETT, by and through his Administrator, ADRIAN BARNETT, WILLIAM CHRISTOPHER BARNETT, KAMYLLE MARIE BARNETT, ADRIAN BARNETT, Mother and Legal Guardian of WILLIAM CORNELIUS BARNETT, a minor, and WILLIAM CENNEDY BARNETT, a minor,<br><br>　　　Plaintiffs,<br><br>v.<br><br>ABNNAH FORBES, PA and JULIA WILSON, MD,<br><br>　　　Defendants. | CIVIL ACTION FILE<br>NO. 1:21-cv-00713-AT |

## DEFENDANTS' INITIAL DISCLOSURES

**ABNNAH FORBES, PA** ("Defendant Forbes") and **JULIA WILSON, MD** ("Defendant Wilson") (collectively, "Defendants"), having been named as Defendants in the above-referenced civil action, come now and submit these Initial Disclosures pursuant to Federal Rule of Civil Procedure 26 and Local Rule 26.1:

(1) If the defendant is improperly identified, state defendant's correct identification and state whether defendant will accept service of an amended summons and complaint reflecting the information furnished in this disclosure response.

**Response: These Defendants have been properly identified.**

(2) Provide the names of any parties whom defendant contends are necessary parties to this action, but who have not been named by plaintiff. If defendant contends that there is a question of misjoinder of parties, provide the reasons for defendant's contention.

**Response: Because Defendants believe that this matter was already adjudicated, the actions of the named Defendants in their course and scope of employment by NaphCare, Inc. could create issues of NaphCare, Inc. being a necessary party in the future.**

(3) Provide a detailed factual basis for the defense or defenses and any counterclaims or cross-claims asserted by defendant in the responsive pleading.

**Response: In Estate of Barnett v. Naphcare, Inc. et. al (Civil Action No. 1:20-cv-03039-CAP)), the Northern District of Georgia, Atlanta Division (J. Pannell) addressed the identical claims asserted by Plaintiffs in the instant case, albeit against NaphCare, Inc. ("NaphCare"), the employer of Defendant Wilson and Defendant Forbes. Six days after Judge Pannell dismissed NaphCare in Barnett**

**I, Plaintiffs filed this lawsuit against Defendants and put the same claims before this Court, hoping that a different judge will yield a different result. Defendants therefore take the position that the current lawsuit is barred by *res judicata* and have filed a motion to dismiss which is currently pending.**

**Further, Defendants deny that they acted with deliberate indifference while providing medical services to Mr. Barnett. Plaintiffs' Complaint fails to properly allege a constitutional claim for deliberate indifference. Facts are still continuing to be developed as discovery has not started and the investigation continues.**

(4) Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which defendant contends are applicable to this action.

**Response: This Defendant identifies the following statutes and case law. The following list is not exhaustive.**

**Statutory Authority: 42 U.S.C. § 1983**

**Case Law:**

**For *res judicata*: <u>Lobo v. Celebrity Cruises, Inc.,</u> 704 F.3d 882 (11th Cir. 2013); <u>Ragsdale v. Rubbermaid, Inc.,</u> 193 F.3d 1235, 1239 (11th Cir. 1999); <u>Citibank, N.A. v. Data Lease Fin. Corp.,</u> 904 F.2d 1498 (11th Cir. 1990); <u>Hall v.</u>**

**Tower Land & Inv. Co.,** 512 F.2d 481 (5th Cir. 1975); *In re* **Lafayette,** 561 B.R. 917 (N.D. Ga. 2016).

**For deliberate indifference: Estelle v. Gamble,** 429 U.S. 97 (1978); **Taylor v. Hughes,** 920 F.3d 729 (11th Cir. 2019); **Mann v. Taser Int'l, Inc.,** 588 F.3d 1291 (11th Cir. 2009); **Adams v. Poag,** 61 F.3d 1537 (11th Cir. 1995); **Harris v. Thigpen,** 941 F.2d 1495 (11th Cir. 1991).

(5) Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information. (Attach witness list to Initial Disclosures as Attachment A).

**Response: See Attachment A. These Defendants further state that they have not identified an exhaustive list of witnesses who may have knowledge relevant to defend against Plaintiffs' allegations because discovery in the matter has not begun.**

(6) Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed. R. Civ. P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule. (Attach expert witness list and written reports to Initial Disclosures as Attachment B.)

**Response: At this time, Defendants have not yet determined whom they will call as a testifying expert. Defendants will provide a disclosure and report for any witness specially retained to provide expert testimony as required by Rule 26(a)(2)(B).**

(7) Provide a copy of, or description by category and location of, all documents, data compilations or other electronically stored information, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and descriptions to Initial Disclosures as Attachment C.)

**Response: See Attachment C. Defendants have not identified an exhaustive list of documents that may be used to support their defenses, and the documents listed in Attachment C are current to the best of their knowledge.**

(8) In the space provided below, provide a computation of any category of damages claimed by you. In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying under Fed. R. Civ. P. 34. (Attach any copies and descriptions to Initial Disclosures as Attachment D.)

**Response: These Defendants do not claim any damages in connection with this case, but seek sanctions against Plaintiffs and Plaintiffs' counsel as further described in Defendants' Motion for Sanctions and Brief in Support currently pending with the Court. Should the Motion for Sanctions be granted, Defendants will produce billing records in support.**

(9) If defendant contends that some other person or legal entity is, in whole or in part, liable to the plaintiff or defendant in this matter, state the full name, address, and telephone number of such person or entity and describe in detail the basis of such liability.

**Response: Unknown to Defendants at this time. Facts are still continuing to be developed.**

(10) Attach for inspection and copying as under Fed. R. Civ. P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)

**Response: See Attachment E.**

Respectfully submitted this 7th day of July, 2021.

**HALL BOOTH SMITH, P.C.**

*/s/ Matthew D. Haan*
John E. Hall, Jr.
Georgia Bar No. 319090
Beth W. Kanik
Georgia Bar No. 406346
Matthew D. Haan
Georgia Bar No. 711856

*Counsel for Defendants Abnnah Forbes, PA and Julia Wilson, MD*

191 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30303-1775
T: 404.954.5000
F: 404.954.5020
jhall@hallboothsmith.com
bkanik@hallboothsmith.com
mhaan@hallboothsmith.com

## LOCAL RULE 7.1D CERTIFICATION

Pursuant to Local Rule 7.1D for the Northern District of Georgia, the above counsel for Defendant NaphCare, Inc. certifies that the above and foregoing is a computer document prepared in Times New Roman (14 point) font in accordance with Local Rule 5.1B and C.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing **Defendants' Initial Disclosures** upon all parties to this matter via certified mail and by depositing a true copy of the same in the U.S. Mail, proper postage prepaid, addressed to counsel of records as follows and/or filing said document with the CM/ECF system which will automatically send electronic notification to the following:

Michael D. Harper, Esq.
Michael D. Harper, P.C.
3481 Lakeside Drive, N.E.
Suite 2406
Atlanta, GA 30326
*mharper@mharperlaw.com*

Respectfully submitted this 7th day of July, 2021.

**HALL BOOTH SMITH, P.C.**

*/s/ Matthew D. Haan*
John E. Hall, Jr.
Georgia Bar No. 319090
Beth W. Kanik
Georgia Bar No. 406346
Matthew D. Haan
Georgia Bar No. 711856

*Counsel for Defendants Abnnah Forbes, PA and Julia Wilson, MD*

191 Peachtree Street, NE
Suite 2900

8

Atlanta, Georgia 30303-1775
T: 404.954.5000
F: 404.954.5020
jhall@hallboothsmith.com
bkanik@hallboothsmith.com
mhaan@hallboothsmith.com

## Attachment A

1.      Abnnah Forbes, PA can provide information regarding the medical treatment provided to Decedent at the Fulton County Jail. Defendant Forbes may be contacted via counsel of record.

2.      Julia Wilson, MD can provide information regarding the medical treatment provided to Decedent at the Fulton County Jail. Defendant Wilson may be contacted via counsel of record.

3.      Any persons (1) identified on Plaintiffs' Initial Witness List; (2) identified in documents to be exchanged between the parties; and (3) who are deposed in this action.

4.      A representative of NaphCare who can provide information regarding NaphCare's policies and procedures for providing medical care at the Fulton County Jail.

## **<u>Attachment B</u>**

None at this time.

## Attachment C

1.      Certified Autopsy Report of the Fulton County Medical Examiner of William Barnett.

2.      Decedent's medical records, including but not limited to the medical records from Grady Memorial Hospital, medical records from NaphCare, Inc., medical records maintained at the Fulton County Jail, medical records from any other medical provider subsequent to Decedent's incarceration at the Fulton County Jail.

3.      Decedent's jail records from the Fulton County Jail.

4.      NaphCare's relevant Health Care Policies and Procedures.

5.      Grady Memorial Hospital's relevant Policies and Procedures.

## **Attachment D**

None.

## **Attachment E**

See attached Exhibit 1 and Exhibit 2.

EXHIBIT 1



## IRONSHORE SPECIALTY INSURANCE COMPANY

**Mailing Address:**
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

This contract is registered and delivered as a surplus lines coverage under the Alabama Surplus Line Insurance Law. (Ala. Code § 27-10-22).

# FOLLOW FORM EXCESS POLICY
# DECLARATIONS

**Policy Number:** 003928600

| Item 1.  NAMED INSURED AND PRINCIPAL ADDRESS | ITEM 2.  POLICY PERIOD |
|---|---|
| NaphCare, Inc.<br>2090 Columbiana Rd.<br>Birmingham, AL  35216 | (a) **Effective Date:** December 31, 2018<br><br>(b) **Expiration Date:** December 31, 2019<br><br>At 12:01 a.m. Standard Time both dates at the Principal Address stated in ITEM 1. |

**ITEM 3.  LIMIT OF LIABILITY**
Per Claim Limit of Liability:  $5,000,000
Aggregate Limit of Liability:  $5,000,000

☐ Defense expenses are included within the limit of liability
☒ Defense expenses are outside the limit of liability

**RETROACTIVE DATE(S)** PL: 7/1/2003, GL/EBL: 12/31/2018

**ITEM 4.  SCHEDULE OF UNDERLYING POLICIES**

**(a)  Primary Policy:**

| Underwriter | Policy Number | Limits | Coverage |
|---|---|---|---|
| Ironshore Specialty Insurance Company | 003886500 | $1,000,000 Each Claim<br>$5,000,000 Aggregate | Professional Liability / General Liability / Employee Benefits Liability |
| Great American Insurance Group | CAP 1-11-63-96-01 | $1,000,000 CSL | Automobile Liability |
| The Charter Oak Fire Insurance Company | TC2OUB-9D89624-1-18 | $1,000,000 Each Accident<br>$1,000,000 Policy Limit<br>$1,000,000 Each Employee | Workers Compensation and Employers Liability |
| The Charter Oak Fire Insurance Company | TROUB-9D89625-3-18 | $1,000,000 Each Accident<br>$1,000,000 Policy Limit<br>$1,000,000 Each Employee | Workers Compensation and Employers Liability |

**(b)  Other Underlying Insurance:**

EXHIBIT 1

| Coverage | Limits |
|----------|--------|
| N/A | N/A |

**ITEM 5.  PREMIUM:**

████████████████████

Premium:  ██████████
----------------------
Total Amount Due:  ████████

██████████████████

████████████████████

**ITEM 6.  NOTICES UNDER SECTION VI OF THE POLICY SHOULD BE ADDRESSED TO:**

USCLAIMS@IRONSHORE.COM

Vice President of Claims
IronHealth
175 Powder Forest Drive,
Weatogue, CT 06089

All other notices under the Policy should be
addressed to:
**Underwriting Department**
IronHealth
175 Powder Forest Drive,
Weatogue, CT 06089

**ITEM 7.  POLICY FORM**

IHFFXS.COV.001 (11.14 ed.) Follow Form Excess Policy

**& ENDORSEMENTS ATTACHED AT ISSUANCE**

1. OFAC.END.001 (11.14 ed.) OFAC Compliance Notice
2. Service of Suit Clause - Alabama - SC-9 (11_18)

**THESE DECLARATIONS, THE COMPLETED SIGNED APPLICATION AND THE POLICY WITH ENDORSEMENTS SHALL CONSTITUTE THE CONTRACT BETWEEN THE INSURED AND THE UNDERWRITER.**

Ironshore Specialty Insurance Company

BY: _____

**Authorized Signature**

**DATE:** February 12, 2019



**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Insured Name:** NaphCare, Inc.
**Policy Number:** 003928600

# FOLLOW FORM EXCESS POLICY

**I.  INSURING AGREEMENT**

In consideration of the payment of the premium, and in reliance on the **Application**, and subject to all of the terms, conditions, limitations and endorsements of this Policy, the **Insurer** agrees to provide the **Insured** with insurance excess of the **Underlying Insurance**, and in conformance with the terms, conditions, limitations, exclusions, definitions and endorsements of the **Primary Policy**, except as otherwise stated in this Policy.  In the event that this Policy provides insurance excess of professional liability, the coverage afforded hereunder in respect of such professional liability will apply only on a claims-made basis, regardless of whether the **Primary Policy** provides such coverage on a claims-made or occurrence basis.

**II.  LOSS PAYMENT**

The **Insurer** shall pay on behalf of the **Insured** for loss, damages, settlements and defense expenses by reason of exhaustion of the limits of liability of the **Underlying Insurance** by the issuers of such **Underlying Insurance** and/or the **Insured(s)**, subject to:  (1) the terms and conditions of the **Primary Policy** (as submitted to the **Insurer**), (2) the Limit of Liability stated in ITEM 3 of the Declarations, (3) the applicable **Retroactive Date(s)** stated in ITEM 3 of the Declarations, and (4) the terms and conditions of, and all endorsements attached to, this Policy.

**III.  DEFINITIONS**

(A)  **"Application"** means any application furnished to the **Insurer**, and all other statements made and information furnished to the **Insurer** and to the issuer(s) of the **Underlying Insurance**, whether directly or through public filing.

(B)  **"Insured"** means the persons and organizations insured under the **Primary Policy**.

(C)  **"Policy Period"** means the period set forth in ITEM 2 of the Declarations.

(D)  **"Primary Policy"** means the policy or policies scheduled as such in ITEM 4 of the Declarations and any policy renewing or replacing it/them.

(E)  **"Retroactive Date"** means the applicable date, set forth in ITEM 3 of the Declarations.  No coverage will be available under this Policy for loss, damages, settlements or defense expenses based on or arising out of any act, error, omission or occurrence happening before the applicable **Retroactive Date**.

(F)  **"Underlying Insurance"** means the self-insured retention(s), **Primary Policy** and all other policies which comprise the per claim and aggregate limit(s) of liability described in ITEM 4 of the Declarations, and any policies renewing or replacing them.

(G)    "**Insurer**" means the insurance company identified in the Declarations.

**IV.    UNDERLYING INSURANCE**

No amendment or modification to the **Primary Policy** or any **Underlying Insurance** shall be binding upon the **Insurer** or effective in changing the terms and conditions of, or extending the coverage or limits of liability afforded by, this Policy without the express written agreement of the **Insurer**.

Notwithstanding anything to the contrary contained in this Policy, the **Insurer** will pay for loss, damages, settlements and defense expenses incurred by the **Insured(s)** only upon reduction or exhaustion of the limits of liability of the **Underlying Insurance**.  This Policy shall not drop down for any other reason, including without limitation, the inability to collect (in whole or in part) any limits of liability of the **Underlying Insurance**.  The risk of such inability to collect any such limits of liability (in whole or in part), whether by reason of financial impairment or insolvency of any issuer of the **Underlying Insurance**, or for any other reason, is expressly retained by the **Insured(s)** and is not in any way or under any circumstances insured or assumed by the **Insurer**.

**V.    LIMIT OF LIABILITY**

The amount stated in ITEM 3 of the Declaration is the limit of the **Insurer's** liability under this Policy, and shall be the maximum amount payable by the **Insurer** under this Policy.  Costs and expenses of defense are either within or outside the limit of liability, as specified in ITEM 3 of the Declarations.

**VI.    NOTICE**

As a condition precedent to any right to payment of the **Insured** under this Policy, the **Insured** shall give the **Insurer** written notice of:

(1)    any claim under the **Underlying Insurance** as soon as possible, but in no event later than required for reporting of claims under the **Primary Policy**; *provided*, that the **Insured** shall give the **Insurer** notice of any claim involving professional liability coverage as soon as practicable, but in no event later than ninety (90) days after the expiration of the **Policy Period**; and

(2)    any matter, including a Notice of Circumstance, with respect to which notice has been provided under any **Underlying Insurance;** *provided*, that the Insured shall give the **Insurer** notice of any Notice of Circumstance involving professional liability coverage as soon as practicable, but in no event later than the expiration of the **Policy Period**.

As used herein, the term "Notice of Circumstance" means written notice of specific facts or circumstances of which the **Insured** becomes aware during the **Policy Period** that may subsequently give rise to a claim.

With respect to notices required hereunder:

(a)    the **Insurer** shall accept loss-run or bordereau reporting that includes information generally provided in such formats; and

(b)    such notices shall be delivered to the Vice President of Claims, as set forth in ITEM 6 of the Declarations. ***Notice to any other address or department of the Insurer shall not satisfy the requirements of this Section VI.***

**VII.    OTHER TERMS AND CONDITIONS**

(A)    The **Insured** shall not admit liability for, or settle or offer to settle any claim for, any amount that would involve the coverage afforded by this Policy without the **Insurer's** prior written consent.

(B)    The **Insurer** may, at its sole discretion, elect to associate in the investigation, settlement or defense of any claim against the **Insured**, even if the **Underlying Insurance** has not been exhausted. If the **Insurer** so

elects, the **Insured** will cooperate with the **Insurer** and will make available all such information and records as the **Insurer** may reasonably require.

(C)     This Policy will not follow form of any Sub-limited Coverage, and no coverage will be available under this Policy for any claim arising out of or otherwise in connection with any such Sub-limited Coverage.  "Sub-limited Coverage" means any coverage afforded under the **Primary Policy** that is expressly subject to a "per-claim" sub-limit of liability under the terms and conditions of the **Primary Policy** (including any endorsement thereto).

(D)     In the event of any payment under this Policy, the Insurer will be subrogated to all the **Insured's** rights of recovery against any person or entity, and the **Insured** shall execute and deliver all instruments and papers and do whatever else is necessary to secure such rights.  The **Insured** shall do nothing that may prejudice the Insurer's position or potential or actual right of recovery. The obligations of the **Insured** under this provision shall survive the expiration or termination of this Policy.

(E)     The person or entity first named in ITEM 1 of the Declarations shall be the sole agent, and shall act on behalf, of the **Insured** with respect to all matters under this Policy, including but not limited to giving and receiving notices and other communications, effecting or accepting any endorsements to or notice of cancellation of this Policy, the payment of premium and the receipt of any return premiums.

(F)     The **Insurer** hereby designates the Director of the Department of Insurance in the state in which this Policy is issued, and his/her successor(s) in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **Insured** arising under or out of this Policy.

**In witness whereof the Insurer has caused this Policy to be executed by its authorized officers.**

Ironshore Specialty Insurance Company by:

Secretary                                                                  President

EXHIBIT 1



**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:

75 Federal Street

5th Floor

Boston, MA  02110

Toll Free: (877) IRON411

**Endorsement # 1**

**Policy Number:** 003928600                    **Effective Date of Endorsement:** December 31, 2018

**Insured Name:**  NaphCare, Inc.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# OFAC COMPLIANCE NOTICE

Payment of Loss under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

All other terms and conditions of this Policy remain unchanged.

_____                    February 12, 2019

Authorized Representative                                            Date

EXHIBIT 1



## IRONSHORE SPECIALTY INSURANCE COMPANY

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 2

**Policy Number:** 003928600                          **Effective Date of Endorsement:** December 31, 2018
**Insured Name:**  NaphCare, Inc.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SERVICE OF SUIT CLAUSE – ALABAMA

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS IN THIS POLICY

Ironshore Specialty Insurance Co. hereby appoints the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as the agent upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance.

The Company furthermore designates Corporation Service Company, Inc., 641 South Lawrence Street, Montgomery, AL 36104 as the agent to whom a copy of the Service of Process should be forwarded by the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the State of Alabama. A copy of any process, "suit", complaint or summons may be made upon the Office of the General Counsel, North America Specialty, Liberty Mutual Insurance, C/O Ironshore Specialty Insurance Co., 175 Berkeley Street, Boston, MA 02116.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____                  February 12, 2019
Authorized Representative                          Date

EXHIBIT 2



# LARGE GROUP COMBINED LIABILITY POLICY
# INFORMATION PAGE

**THIS POLICY CONTAINS COVERAGES WRITTEN ON A "MODIFIED CLAIMS-MADE" BASIS. IT IS REGISTERED AND DELIVERED AS SURPLUS LINES INSURANCE COVERAGE IN ACCORDANCE WITH THE SURPLUS LINES INSURANCE LAWS OF YOUR STATE.**

**THE COMPANY**:  Ironshore Specialty Insurance Company

**AGENT'S NAME AND ADDRESS:**
Arthur J. Gallagher Risk Management Services, Inc.
2200 Woodcrest Place
Suite 250
Birmingham, AL 35209-

**POLICYHOLDER:**  NaphCare, Inc.
2090 Columbiana
Road Suite 4000
Birmingham, AL 35216

**POLICY NUMBER: 003886500**

**POLICY PERIOD BEGINNING: December 31, 2018**

This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Lines Insurance Law.

EXHIBIT 2

# LARGE GROUP COMBINED LIABILITY POLICY
# COVER PAGE

In consideration of the payment of the premium, and in reliance upon the statements and representations in the applications for insurance and the **Coverage Summary**, **we** agree to provide the insurance contained in the **policy**.

THE COMPANY: Ironshore Specialty Insurance Company

POLICYHOLDER: NaphCare, Inc.
         2090 Columbiana Rd., Ste. 4000
         Birmingham, AL 35216

Arthur J. Gallagher Risk Management Services, Inc.
2200 Woodcrest Place, Suite 250
Birmingham, AL 35209

POLICY NUMBER: **003886500**

The **policy** consists of this **Cover Page** and the following forms:

Coverage Summary
General Liability Coverage Part - Definitions
Professional Liability Coverage Part (Claims-Made Form)
General Liability Coverage Part - General Exclusions
(HIPAA) – Civil Monetary Penalty Endorsement
Correctional Medicine Civil Rights Endorsement
Sexual Misconduct Coverage Part
General Liability Coverage Part (Occurrence Form)
Blanket Scheduled Location Endorsement – Shared Limits
Amendatory Endorsement – Special Notice of Cancellation – The County of Kings, CA
Amendatory Endorsement – Defense of License Reimbursement Endorsement
Cross Policy Liability Exclusion Endorsement
Professional Incident Reported within 120 Days Endorsement
Florida and Maryland Consent to Settle Endorsement
Blanket Additional Insured Endorsement
Benton County Municipality Endorsement
Clark County Municipality Endorsement
Franklin County Municipality Endorsement
Lewis County Municipality Endorsement
Middlesex County Municipality Endorsement
Orange County Municipality Endorsement
Pierce County Municipality Endorsement
Spokane County Municipality Endorsement
Washington County Municipality Endorsement
Washoe County Municipality Endorsement
Waiver of Subrogation Endorsement
Employee Benefit Programs Endorsement

If any provision of the **policy** changes, **we** will issue an endorsement stating the effective date of any changes.

Terms appearing in the **policy** in **bold face print** are defined in the Professional Liability Coverage Part Definitions form, as applicable to professional liability coverage; in the General Liability Policy Definitions part, as applicable to general liability coverage; and in certain endorsements, as applicable to the subject matter of those endorsements.

**IN WITNESS WHEREOF, we** have caused the **policy** to be signed by **our** President and Secretary. The **policy** is effective only if countersigned on the **Coverage Summary** by **our** duly authorized representative.

Secretary                                         President

EXHIBIT 2

# LARGE GROUP COMBINED LIABILITY POLICY
# COVERAGE SUMMARY

1.  Policyholder and Address: NaphCare, Inc.                    Majority Risk Location: Alabama
                      2090 Columbiana Rd., Ste. 4000
                      Birmingham, AL 35216

2.  Policy Number:

3.  Policy Period: <u>December 31, 2018</u> to <u>December 31, 2019</u> 12:01 a.m. Standard Time at the address of the Policyholder
    as stated above.

4. Premium:



5.  Limits of Liability:

    Large Group Professional Liability Coverage Part
        (1)   Each Professional Incident                                    $ 1,000,000
        (2)   Each Insured Professional Aggregate                           $ 1,000,000

        (3)   Total Professional Liability Aggregate Limit                  $ 5,000,000

    Large Group General Liability Coverage Part
        (1)   Each Occurrence Limit (COVERAGE A)                            $ 1,000,000
        (2)   Fire Damage Limit (Coverage A)                               $   100,000
        (3)   Personal Injury and Advertising Injury Limit (Coverage B)     $ 1,000,000
        (4)   Medical Expense Limit (Coverage C)                           $     5,000
        (5)   Total General Liability Aggregate Limit                       $ 5,000,000

6.  Deductibles (if applicable):

7.  Coverage Effective Date:

8.  Retroactive Dates (if applicable):
        (1)   Large Group Professional Liability Coverage Part               July 1, 2003
        (2)   Large Group General Liability Coverage Part                December 31, 2018

9.  Scheduled Facilities:                                              On file with Company

10. Covered Subsidiaries and Other Insureds:                     NaphCare, Inc., NaphCare US, Inc.,
                                                                 NaphCare Charitable Foundation, Inc. – GL
                                                                 NaphCare, PC, NJ, LLC, Feely Nephrology
                                                                 LLC

EXHIBIT 2

Countersigned by:

_____
Authorized Representative